Stevens v. Partridge.

## Mary S. Stevens, Julia Campbell and Albert Campbell v. Alice Partridge, Executrix, etc.

| 88 | 665 |
|---|---|
| a187s383 | |

| 88 | 665 |
|---|---|
| 92 | 440 |

| 88 | 665 |
|---|---|
| s109 | 487 |
| s109 | 488 |

1.  BONDS—*Joint and Several Obligations—Pleading.*—An allegation in the declaration that the defendants by their bond acknowledged themselves to owe to the plaintiffs the sum of $50,000, at the common law imports a joint obligation. By Sec. 3 of Chap. 76 of Hurd's R. S. 1899, all joint obligations and covenants are to be taken as joint and several.

2.  JOINT OBLIGATIONS—*At Common Law.*—Under the common law, when a joint contractor dies, his liabilities on the contracts cease, and his representatives do not become liable to an action at law.

3.  SAME—*Obligee May Prove Admissions of One Joint Obligee Against the Other.*—One of the rights reserved by the common law is the ability of the obligee to prove the acts and admissions of one joint obligor against the other, when such acts and admissions relate to the joint contract.

4.  SAME—*Breach of Several Interest.*—A breach of a several interest does not include the existence of a joint cause of action in all of the obligees. Not only must the interests be several, but the causes of action must be distinctly several also.

5.  ESTOPPEL—*Of Party to Deny Facts Serving to Qualify Contract.*—If parties contracting even without seal, recite or otherwise assume, by the written or oral words which constitute the contract, facts serving to qualify or limit it or its effects, or interpretation, each, together with his legal representatives, is estopped to deny such facts in any controversy under the contract.

6.  PARTIES—*Nominal Parties to a Bond.*—In an action of debt on an executor's bond, a person who is a party to the bond is a necessary party plaintiff, although he has no interest in the property.

Debt, on executor's bond. Appeal from the Circuit Court of Effingham County; the Hon. SAMUEL L. DWIGHT, Judge, presiding. Heard in this court at the August term, 1899. Reversed and remanded. Opinion filed March 16, 1900.

**Statement.**—This is an action of debt brought by appellants Mary S. Stevens, (formerly Barbee), Julia B. Campbell and Albert Campbell, against appellee, as executrix of the last will and testament of Joseph Partridge, deceased, upon a penal bond, a copy of which, filed with the declaration, is as follows:

"Know all men by these presents, that we, Joseph Partridge, Jr., Joseph Partridge, Sr., of the city of Effingham, in the county of Effingham and State of Illinois, are held and firmly bound unto Mary S. Barbee and Julia Campbell and Albert Campbell, of Effingham, of the county of Effingham, and State of Illinois, in the sum of fifty thousand dollars, for the payment whereof well and truly to be made we bind ourselves, our heirs, executors and administrators, jointly and severally, firmly by these presents.

Witness our hands and seals this 9th day of August, A. D. 1892. The condition of the above obligation is such that whereas, the said Mary S. Barbee, Julia Campbell and Albert Campbell have this day executed to the above bounden Joseph Partridge, Jr., a power of attorney to act for them as financial agent, with full power and control of large sums of money, which power of attorney is by reference made a part hereof, now if the said Joseph Partridge, Jr., shall exercise due diligence in the management of the matters under his charge in the interest of the said Mary S. Barbee, Julia Campbell and Albert Campbell, and shall, whenever called upon, report to them the condition of the estate under his control, and shall not misappropriate any of the funds or property belonging to the same, and shall perform all of the covenants above mentioned, then this obligation to be void, otherwise to remain in full force and effect.

J. Partridge, Jr.    [Seal.]<br>
Jo. Partridge.    [Seal.]"

The power of attorney is as follows:

"Know all men by these presents, that we, Mary S. Barbee, and Julia Campbell and Albert Campbell, her husband, of the city of Effingham, County of Effingham and State of Illinois, have made, constituted and appointed, and by these presents do make, constitute and appoint Joseph Partridge Jr., of the city of Effingham, county of Effingham and State of Illinois, our true and lawful attorney for us and in our names, place and stead, to contract for, buy and sell

real estate, buy and sell mortgages and stocks and other securities, loan money, receipt for money, release mortgages, and do and perform all other things pertaining to the handling of our money and property as our financial agent, giving and granting unto him, our said attorney, full power and authority to do and perform all and every act and thing whatsoever requisite and necessary to be done in and about the premises, as fully to all intents and purposes as we might or could do, if personally present at the doing thereof, with full power of substitution and revocation, hereby ratifying and confirming all that our said attorney or his substitute shall lawfully do, or cause to be done by virtue hereof.

In testimony whereof, we have hereunto set our hands and seals, this 9th day of August, 1892.

MARY S. BARBEE.      [SEAL.]
JULIA B. CAMPBELL.   [SEAL.]
AL. CAMPBELL.        [SEAL.]"

The declaration consists of two counts, to each of which a general demurrer was sustained, and plaintiffs elected to stand by their declaration, when judgment was rendered against them for costs, and they appealed, and assign the judgment as error.

WM. B. WRIGHT, E. N. RINEHART, and WOOD BROS., attorneys for appellants.

R. C. HARRAH, S. F. GILMORE, and CALLAHAN & JONES, attorneys for appellee.

MR. PRESIDING JUSTICE BIGELOW delivered the opinion of the court.

The first count of the declaration sets out the bond (including the power of attorney) according to its legal effect, and alleges that by virtue thereof, Joseph Partridge, Jr., became the financial agent of plaintiffs, and so continued from August 10, 1892, to January 1, 1898, during which time he received of the property of the plaintiffs, Mary S. Stevens and Julia B. Campbell, the sum of $90,000, consisting of money, stocks, bonds, notes, mortgages and other choses in action; and that he also received as rents of

real estate which he managed for them, the sum of $10,000; that he misappropriated a large amount of money and property belonging to Mary S. Stevens and Julia B. Campbell, and in which Albert Campbell had no interest except as the husband of Julia B.

Several breaches of the bond are assigned, alleging misappropriations of property; in some of them the property is alleged to be that of Mary S. Stevens and Julia B. Campbell; in other breaches it is alleged that some of the property is that of Mary S. Stevens; in others it is alleged that some of the property is that of Julia B. Campbell; and in still others it is alleged that some of the property is that of the "plaintiffs."

In the second count it is alleged that the money and property so misappropriated came to the possession and control of Joseph Partridge, Jr., by virtue of the power of attorney and the bond; that said property was in the possession and control of the plaintiffs, and that it was managed and controlled as one estate and property, and that the title to the various portions thereof was vested in Albert Campbell, in Julia B. Campbell, in Mary S. Stevens, and in Mary S. Stevens and Julia B. Campbell, respectively, the plaintiffs composing one family and living together as such; that Joseph Partridge, Sr., was the father of Joseph Partridge, Jr., and that he knew, when he executed the bond, the nature, title and description of the property, as well as the relationship and situation of the plaintiffs.

To this count there were numerous causes of special demurrer filed, and they were all sustained by the court; but whether in this ruling the court erred, is not important to determine, as there are other controlling questions in the case. It is urged by appellee that the sustaining of the general demurrer to both counts of the declaration is correct, for the reason that Joseph Partridge, Sr., was merely surety on the bond and as the contract of suretyship is *strictissimi juris*, the surety can not be bound beyond the strict letter of his bond. That the recital of the bond is for the "handling of our money and property," and therefore

Stevens v. Partridge.

the surety is only liable for property misappropriated, which was the joint property of all the plaintiffs, and inasmuch as the declaration shows Albert Campbell has no interest in the property, and the other plaintiffs are only interested in moieties thereof, the surety is not liable for any of the property misappropriated, because it was not of the class of property for which the surety became sponsor; that the surety might well be willing to be sponsor for property in which Albert Campbell had an interest in common with the others, as he might be a man of large business experience, and where his own interests were involved, he might feel impelled to look after the property in the hands of a financial agent, common to all of the plaintiffs, and thereby exercise a supervision over the agent for the benefit of all, including the surety.

Most of the questions raised are not involved on the demurrer.

It is nowhere stated in the declaration that Joseph Partridge, Sr., was merely surety on the bond; and the assumption that he was is unwarranted. The bond itself contains no such recital, were it permissible on the demurrer to look at its contents (which we may not judicially do, in the present state of the record, unless it be that counsel for appellee so desire, by giving, in their additional abstract, complete copies of the bond and power of attorney, for that purpose).

The averments in the first count of the declaration are :

" Joseph Partridge, Sr., in his lifetime, and the said Joseph Partridge, Jr., on the 10th day of August, 1892, by their bond, acknowledged themselves to owe to the plaintiffs the sum of $50,000."

This allegation at the common law imports a joint obligation. By Sec. 3 of Chap. 76 of Hurd's R. S. 1899, all joint obligations and covenants are to be taken as joint and several.

Under the common law, when a joint contractor died, his liability on the contract ceased, and his representative did not become liable in an action at law. 1 Beach on Con-

tracts, Secs. 669, 677.   So that the contract in suit is before the court by virtue of Sec. 3, above cited.

It may be that Joseph Partridge, Sr., was, as to his son, surety; but for anything that appears in the declaration, he may have assumed the character of a joint obligor to the plaintiffs, they refusing to accept his undertaking, except as a joint obligor, to avoid being met by defenses permissible to sureties.   But the statute above quoted, makes the contract several.   The statute is either in derogation of the common law, and hence is to be strictly construed, or it is of a remedial nature and is to be liberally construed.   If it is to be construed as in derogation of the common law and enacted for the benefit of obligees only, then all rights possessed by the obligees at the common law have been preserved, and only a new remedy has been given.

One of the rights preserved is the ability of the obligee to prove the acts and admissions of one joint obligor against the other, when such acts and admissions relate to the joint contract.   If Joseph Partridge, Sr., was a joint obligor (and the demurrers concede that he was), then the admissions, whether by words or conduct of Joseph Partridge, Jr., will bind his father, in the matter of handling the money and property.   Rhode v. McLean, 101 Ill. 467; Smith v. Henline, 174 Ill. 184.   And if the various sums of money and property alleged in the declaration were received by the son, by virtue of the power of attorney and the bond (and the demurrers admit they were), he can not now question whose money and property it may be in fact.   Appellee's testator, as joint obligor, stands in legal identity with the son in such matters.

" If parties contracting, even without seal, recite or otherwise assume, by the written or oral words which constitute the contract, facts serving to qualify or limit it or its effects, or interpretation, each, together with his legal representatives, is estopped to deny such facts in any controversy under the contract."   Bishop on Contracts, Sec. 285; Ib. 286; Miller v. McManis, 57 Ill. 126; Hall Man'f'g. Co. v. Am. Ry. Co., 48 Mich. 331; Sinclair v. Murphy, 14 Mich. 392.

It may be that the statute, making the contract joint and

several, was enacted for the benefit of obligors as well as obligees, and so is to be construed liberally, and is to be viewed. as a several contract, created by the acts of the parties themselves (the second count alleges a joint and several contract), and therefore the admissions of Joseph Partridge, Jr., are not competent evidence against his father's representatives; that appellee is bound only by the precise terms of the contract, irrespective of what the son may have done or said, in reference to the receipt of money and property of plaintiffs.

Waiving the point that the question of suretyship is not in this record, we have carefully considered the case on its merits, as they may hereafter appear.

While the law undoubtedly is, that a contract of suretyship is *strictissimi juris*, yet this rule relates to the application of the contract after it has been construed, and not to the construction itself.    The contract is to be construed by the same rules that all other contracts are.   1 Brandt on Suretyship and Guaranty, 2d Ed., Sec. 92.   But when this has been done, no acts of the principal that might operate against him in an action on the contract, can be put in evidence against the surety, unless he has done some act that helps to practically construe the contract.   Id., Sec. 94.   In this view many of the allegations in the second count were pertinent, though it must be admitted that others were immaterial.   The declaration in several of the breaches in both counts, charges that Joseph Partridge, Jr., as financial agent of the plaintiffs, took a large amount of the money and property of the "plaintiffs."

In regard to such allegations, the property is by the demurrers admitted to be the very property that appellee's testator became sponsor for; and the demurrers being addressed to the entire declaration, should have been overruled as to such breaches.

Other breaches allege some of the property to have been that of Mary S. Stevens; others that some of the property and money was that of Julia B. Campbell; and still others allege that some of the property was that of Mary S.

Stevens and Julia B. Campbell, there being a general state-ment in the inducement of the first count of the declara-tion that Albert Campbell had no interest in said property, except as the husband of Julia B. Campbell; and a general allegation in the second count, that the title to some of the property was vested in Albert Campbell. The position taken is, that the assumed surety became sponsor only for prop-erty that was jointly owned by all of the plaintiffs, and that no property owned in severalty is within the contract of suretyship.

If Joseph Partridge, Sr., was in fact surety for his son, and did some act or acts to put a different construction on this contract, his legal representative is estopped under the authorities cited above, to urge the construction contended for now. If he did no such act, then the measure of liabil-ity is the contract which he signed; but the court must construe the contract.

We are of opinion that money and property owned by the plaintiffs in severalty, may, without violating any of the canons of construction, when there is occasion to predicate something in reference to the entire mass, well be affirmed to be that of the plaintiffs; that property owned jointly by all the plaintiffs is, in common acceptation, no more cer-tainly the property of the plaintiffs than property owned by them in severalty, when any statement is made concern-ing such property collectively. If each one had some prop-erty, then all of that property was the property of all.

This construction is warranted by the structure of the bond itself, as recited by the averments of the declaration. It is alleged in the declaration that the condition of the bond is, that Joseph Partridge, Jr., should not misappropri-ate any of the funds and property of the "estate."

The implication from this language is that the obligors and obligees alike viewed the separate interests of the obligees as consolidated into one single entity, existing as a unit in all of the plaintiffs, and the circumstances sur-rounding the parties so far as disclosed by the pleadings, go far in sustaining this view. Had the condition been that

he should not misappropriate any of the moneys belonging to Mary S. Stevens, Julia B. Campbell and Albert Campbell, and had the condition further clearly excluded a joint cause of action in the obligees for the breaches of their several interests, this case would have been within the principle announced in Safford v. Miller, 59 Ill. 205. A breach of a several interest does not exclude the existence of a joint cause of action in all of the obligees. Not only must the interests be several, but the causes of action must be distinctly several also. 1 Chitty on Pleading (16th Am. Ed.), * 9, note (y); Ib. * 11, note (n.); Capen v. Barrows, 1 Gray, 376; Wall v. Hinds, 4 Gray, 256.

The several breaches pleaded are mere enumerations of items that go to make up the estate. The estate seems to be viewed by the terms of the bond, as though a single piece of the chattel property had come to the possession of Joseph Partridge, Jr., for the return of which, he and appellee's testator obligated themselves.

Stress is laid on the allegation that Albert Campbell has no interest in the property; but he is a party to the bond, and therefore is one of the necessary parties plaintiff. Phillips v. Singer Mfg. Co., 88 Ill. 305.

And inasmuch as it does not clearly appear under the covenant of the bond, not only that the interests are several, but that the causes of action are also several, under the authorities cited above, when a breach of the bond occurs, there is a legal cause of action vested in him and the other obligees.

This is not like a case where, though the obligation is joint, yet a several interest is clearly shown by the same obligation to exist in each one of the obligees.

To sustain the action, in such case, there would have to be separate determinations of the rights of different persons in the same action, which is not permitted in our practice. Safford v. Miller, *supra*. Campbell's non-interest in the property presents no such obstacle. Gautzert v. Hoge, 73 Ill. 30; Sandusky v. Neal, 2 Ill. App. 624; Miller v. Kingsbury, 28 Ill. App. 532.

For the error in sustaining appellee's demurrers to each of the counts of the declaration, and in rendering judgment against appellants for costs, the judgment is reversed and the cause remanded.